# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### COLUMBUS DIVISION

RAHEIN JAMAL RADFORD,    \*
    \*
    Plaintiff,    \*
    \*
VS.    \*    CASE NO. 4:05-CV-80 (CDL)
    \*    42 U.S.C. § 1983
HERMAN JOHNSON, et al.    \*
    \*
    Defendants.    \*

## REPORT AND RECOMMENDATION

Before the court is the Defendants' Motion for Summary Judgment filed on May 30, 2006. Plaintiff was notified by the court of the filing of said motion and given thirty days to respond. Plaintiff has filed no response to date.

## Legal Standard

Federal Rule of Civil Procedure 56, which deals with motions for summary judgment provides in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed. R..Civ. P. 56 (c); Warrior Tombigee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court

in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913 (11th Cir. 1993). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Summary judgment is appropriate when the non-movant "fails to make a showing sufficient to establish the existence of an element essential

2

to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Citrate*, 477 U.S. 317, 322, 106 S.C. 2548, 91 L.Ed.2d 265 (1986); *Tidmore Oil Co. v. BP Oil Co./Gulf Prods. Div., a Div. of BP Oil Co.*, 932 F.2d 1384. 1387-88 (11th Cir.1991), cert. denied, 502 U.S. 925, 112 S.Ct. 339, 116 L.Ed.2d 279 (1991).

Motions for summary judgment are normally decided based on the pleadings, and the discovery of record, together with any affidvits submitted by the parties, in deciding whether summary judgment is appropriate under Rule 56. The party upon whom a Motion for Summary Judgment has been filed has the right to file affidvits or other material in opposition to a summary judgment motion.  If he fails or refuses to file any affidvits or other materials in opposition to the Motion for Summary Judgment, a Final Judgment may be rendered against him if otherwise appropriate under law.  Specifically, Federal Rule of Civil Procedure 56(e) provides, that:

> Supporting and opposing affidvits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidvits to be supplemented or opposed by depositions, answers to interrogatories, or further affidvits. **When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidvits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the**

**adverse party**. (emphasis added).

## Factual History

On July 25, 2005, Plaintiff Radford filed a civil rights action under 42 U.S.C. § 1983 naming as Defendants, Warden Herman Johnson, Deputy Warden Samuel Dotson, Deputy Warden Brown L. Keys, Jr., Officer Farley, Darron Perry, Officer Moore, Warden Donald Barrow, Deputy Warden Nervo, Chief of Security Kevin Kinnel, Officer Bryan Sain, Officer Andre Yancy, Officer Jesse Howell, Sergeant Eric Blades, Lt. Del Rossie, Lt. Calvin Orr, Health Services Director Al Jones, Lt. Douglass Ridall, Nurse Melissa Barrentine, Correction Division Director Alan A. Adams, and Commissioner James E. Donald. Plaintiff alleges that he was transferred from Rutledge State Prison (RSP) to Valdosta State Prison (VSP) under false pretenses and that he was beaten upon his entry into VSP. Plaintiff further alleges that specific defendants at both VSP and RSP conspired to prevent him from properly grieving his claim through the administrative system and denied him medical treatment. He seeks monetary damages and the termination of each defendants' employment.

## DISCUSSION

### I. Administrative Exhaustion of Remedies

While prisoners have a constitutional right to access to the courts[1], those rights are regulated by 42 U.S.C. § 1997(e), which "sets forth the procedures prisoners must follow in

---

[1] *See Lewis v. Casey*, 518 U.S. 343, 351, 116 S.Ct. 2174, 2180, 135 L.Ed.2d 606 (1996), which states that prisoners must be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts."

exercising their fundamental right of access to the courts.  Under this provision, prisoners must exhaust any administrative remedies available to them before filing a suit in federal court based on violations of constitutional rights." *Miller v. Tanner*, 196 F.3d 1190, 1192-1193 (11th Cir. 1999).  Specifically, section 1997e(a) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

In *Alexander v. Hawk*, the Court of Appeals stated that "Congress enacted this mandatory exhaustion requirement in section 1997e(a) as part of the PLRA's effort to curtail frivolous and abusive litigation."  159 F.3d 1321, 1324 (11th Cir. 1998); *See, e.g., Rivera v. Allin*, 144 F.3d 719, 727-28 (11th Cir. 1998). In *Alexander*, the Court reiterated seven policies favoring exhaustion:

> (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise it's discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that "frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

159 F.3d 1321, 1327 (11th Cir. 1998); *citing Kobleur v. Group Hospitalization & Medical*

*Services, Inc.*, 954 F.2d 705, 712 (11th Cir. 1992).  Those enumerated the policy reasons articulated by the Eleventh Circuit for requiring exhaustion are applicable here.

On or about August 2, 2004, Plaintiff Radford filed grievance number 0537-04-0583. (R-42-4, Exhibit "A").  In said grievance, Plaintiff alleges that he was improperly transferred from Rutledge State Prison (RSP) to Valdosta State Prison (VSP) and that an incident of excessive force occurred at Valdosta State Prison on June 30, 2004, upon intake.  *Id*. Plaintiff named defendants from both Valdosta State Prison and Rutledge State Prison in his grievance.  *Id*.  However, Plaintiff failed to exhaust his administrative remedies in reference to Defendants Donald and Adams, as they were not named parties to the above-referenced grievance.  Furthermore, there is no evidence in the record to indicate that Plaintiff properly exhausted his administrative remedies as to Defendants Donald and/or  Adams, within ten days of any alleged violation of his constitutional rights, nor is there evidence that Plaintiff completed the full grievance procedure as to aforementioned defendants as required by SOP IIB05-0001, Section VI(B)(5).

As 42 U.S.C. §1997e(a) requires that a prisoner Plaintiff exhaust his administrative remedies before filing federal suit, Plaintiff Radford was premature in his filing against Defendants Donald and Adams.  Therefore, all claims related to Defendants Donald and Adams should be dismissed for Plaintiff's failure to exhaust his administrative remedies.

## II.  Claims

Plaintiff Radford's complaint contained nine enumerated claims.  In an attempt at clarity, said claims have been divided by subject matter.

A.  Manufacturing Evidence

Claim Four of Plaintiff's Complaint alleges that Rutledge Defendants, Warden Johnson, and Deputy Wardens Dotson and Keys, Jr., "manufactured false information to effectuate the emergency disciplinary transfer of Plaintiff Radford to Valdosta State Prison . . . with deliberate indifference to the safety and life of [Plaintiff], with reckless disregard for the existing standard operating procedures under established departmental policy in contravention of the Eighth and Fourteenth Amendments to the United States Constitution." (R-1).

As the Eleventh Circuit has repeatedly held, a  "non-moving party 'may not rest on mere allegations or denials of the adverse party's pleading' when a motion for summary judgment is made and supported by affidavits or the other methods provided in Rule 56; 'specific facts showing there is a genuine issue for trial' must be supported 'by affidavits or as otherwise provided in this rule' and provided by the non-moving party to avoid summary judgment." *Valdivieso v. Atlas Air, Inc.*, 305 F.3d 1283 (11th Cir. 2002); *citing* F.R.C.P. 56(e).

In *Bennett v. Parker*, the Eleventh Circuit reiterated the Supreme Court holding in *Celotox Corp. v. Citrate*, stating:

> The existence of material disputed facts will not defeat summary judgment in favor of a public official, however, when the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [plaintiff's] case, and on which [plaintiff] will bear the burden of proof at trial." *Celotex Corp. v. Citrate*, 477 U.S. 317, 322, 106 S.C. 2548, 2552, 91 L.Ed.2d 265 (1986).  Facts in dispute cease to be "material"

7

> facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23, 106 S.C. At 2552. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir. 1990).

Furthermore, the PLRA provides at 42 U.S.C. § 1997e(e):

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

Plaintiff has made no allegation of physical injury, which could possibly be considered more than a *de minimis* injury and the factual allegations do not indicate a physical injury. The Eleventh Circuit Court of Appeals has held in an *en banc* decision that the physical injury requirement even applies to claims of a constitutional nature and must be more than *de minimis*. *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 2000). Furthermore, the Eleventh Circuit has held that when a Plaintiff's affidavit contains only a conclusory allegation of serious injury without any other supporting evidence, the allegation should be discounted. *Id* at 1533; See *Brown v. Smith*, 813 F.2d 1187 (11th Cir. 1987). No material issues can be in dispute where the plaintiff's evidence fails to establish a constitutional violation. *Id* at 1534. Plaintiff has failed to provide support for any alleged constitutional violations on the part of these Defendants and failed to respond to the Motion for Summary

Judgment.  This claim is frivolous and the Motion for Summary Judgment as to Claim Four should be granted.

    B.  Excessive Force

    Claim One of Plaintiff's Complaint alleges excessive force on part of Defendants Blade, Del Rossie, Howell, Kinnel, Orr, Ridall, Sain and Yancy, with the alleged search and assault occurring on June 30, 2004, during his intake into Valdosta State Prison. (Plaintiff's Complaint, Supplemental Sheet 4A).   Although  Plaintiff  captions  Claim  One  as "Unreasonable Search and Seizure and Excessive Force," Plaintiff fails to plead an unreasonable search or seizure in the body of the claim.  In his grievance and complaint, Plaintiff described a strip search upon his intake at Valdosta State Prison.  (R-1 and R-42-2, Exhibit "A").  It appears from the documents submitted by Plaintiff that he did not object to being in custody (the seizure), or  the strip search itself, but rather objected to alleged excessive force used during the intake process.  *Id.*  Therefore, as no search and seizure issue has been properly pled by Plaintiff, this Claim will be treated as one of excessive force only. Claim Two alleges excessive force for the same incident and includes the same defendants as Claim One, but with the addition of Warden Barrow and Deputy Warden Nervo.  (R-1). Claim Seven alleges cruel and unusual punishment, an equal protection violation and racial discrimination.  *Id.*  Plaintiff alleges that on June 30, 2004, the Valdosta Defendants singled him out for a "violent team-assault" which was "motivated by racial malice and stereotypical notions concerning huge, athletically-built black men."  *Id.*  Claim Eight alleges racial discrimination on the part of Valdosta Defendants in that during the alleged excessive force

9

incident on June 30, 2004, said defendants beat Plaintiff, "a similarly situated black Plaintiff," differently than they beat non black prisoners, "in contravention of the Equal Protection Clause to the United States Constitution."  (R-1).   Claim Nine alleges that Valdosta Defendants Barrentine, Blade, Del Rossie, Howell, Jones, Kinnel, Orr, Ridall, Sain and Yancey, denied Plaintiff "medical evaluation and treatment to Plaintiff Radford upon intake, following use of force and since, and in making fraudulent entries on the intrasystem transfer form contained in Radford's medical file" and thus "acted with deliberate indifference to the health and safety of Radford contrary to established policies and in derogation of the Eighth and Fourteenth Amendments to the United States Constitution." *Id*.

"[A] prisoner alleging excessive force must demonstrate that the defendant acted 'maliciously and sadistically to cause harm.'" *Porter v. Nussle*, 534 U.S. 516, 528, 122 S.C. 983 (2002); *citing Hudson v. McMilliam,* 503 U.S. 1, 112 S.C. 995, 117 L.Ed.2d 156 (1992); *further citations omitted*.   Furthermore, to prevail on an excessive force claim, Plaintiff must prove that the mental state of the defendants was "'purposeful or knowing conduct,'" as opposed to the lesser *mens rea* requirement of deliberate indifference which governs "conditions of confinement claims." *Id*.  Any examination of excessive force as used against a prisoner must be examined under the Eight Amendment.[2]  In an Eight Amendment case, the Plaintiff must show actual injury.  *Oliver v. Falla*, 258 F.3d 1277, 1282 (11th Cir. 2001). Although the injury sustained does not have to be significant, generally it must be more than

---

[2]  *See Hudson v. McMilliam,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992), generally.

de minimis.  *Hudson, supra* at 9.  A helpful guide for determining the types of injuries that

surmount the *de minimis* physical injury bar has been described as follows:

> A physical injury is an observable or diagnosable medical condition
> requiring treatment by a medical care professional.  It is not a sore
> muscle, an aching back, a scratch, an abrasion, a bruise, etc., which
> last even up to two or three weeks.  People in regular and ordinary
> events and activities in their daily lives do not seek medical care for
> the injuries they receive unless it obviously appears to be of a serious
> nature, or persists after home remedy care.   Thus, the seriousness of
> the injury needed to rise above *de minimis,* would under *Siglar v.*
> *Hightower, (cite omitted),* require more than the types and kinds of
> bruises and abrasions about which the Plaintiff complains.  Injuries
> treatable at home and with over-the-counter drugs, heating pads, rest,
> etc., do not fall within the parameters of 1997e(e)."

*Luong v. Hatt,* 979 F. Supp. 481 (N.D. Tex. 1997).

Here, Plaintiff has failed to plead more than a *de minimus* injury.  Defendants

provided affidavits from Defendants Sain, Yancy, Blades, Howell, Del Rossie, Orr, Ridall,

and Kinnel which stated that they did not use force against Plaintiff Radford, nor did they

witness another defendant using force against Plaintiff.  (R-42-4, Exhibit "A").  In addition,

Defendants provided a medical record from Defendant Barrentine's examination of Plaintiff

at Valdosta State Prison on June 30, 2004, upon intake and after the alleged incident of

excessive force.  (R-42-6, Exhibit "C").  The Intrasystem Transfer Form shows that Plaintiff

voiced no complaints of discomfort, that he was alert and his respirations were even and un-

labored.  *Id*.  The record indicates that Defendant Barrentine took Plaintiff Radford's blood

pressure, his heart rate, his rate of respirations, his temperature and his weight.  *Id*.  There is

no indication from the medical record that either Plaintiff's blood pressure or his heart rate

were elevated. *Id*. Plaintiff Radford was treated for shoulder pain on July 9, 2004. (R-42-7,

Exhibit "D"). The record shows that Plaintiff stated that the pain had been present about a

month, which would have put any injury well before the date of the alleged excessive force.

*Id*. On said date, there was no mention of abdominal pain nor of swelling to his face. *Id*.

In addition, Plaintiff Radford was treated with a non-prescription strength Ibuprofen (two

200 mg tablets every six hours as needed). *Id*. Plaintiff also complains of trouble sleeping

and nightmares about the alleged assault. (R-1). In his deposition on April 6, 2006, the

following exchange took place between Plaintiff and counsel for the defendants:

> Q. . . . Can you describe the injuries for which you're seeking
> monetary damages, and please identify each injury and
> condition separately just so I can know what each one is.
> A. Okay. Each injury, well, basically, I was never treated at the time to be able
> to be aware of my injuries.
> Q. Okay.
> A. You know, that has it documented. All I could do was just – Well, by the
> time I was seen, you know, I was – You know, I was – Well, the
> only thing I suffered from afterwards was a little sore shoulder
> and my lower stomach from being punched in the scrotum.
> Q. Uh-huh.
> A. And mental and emotional.
> Q. Well, not worrying about what's documented, go ahead and
> tell me specifically. You know, I'm not worried about what was
> documented, but you said you had a sore shoulder as a result.
> A. Yes.
> Q. Can you – and that, I guess, arose at the time of the incident?
> A. Yes.
> Q. Okay. And you didn't – you did not receive any medical
> treatment for that, did you?
> A. Eventually, I was treated, you know.
> Q. Okay. And when you were treated, and what was the
> treatment that was given for the sore shoulder?
> A. I think it was July the 9th I was finally seen.
> Q. Okay.

A.  2004, and only I was given some Ibuprofen, you know.

Q.  Uh-huh, okay.  Have you received any subsequent medical treatment for the sore shoulder?

A.  Except for the Ibuprofen, that was it.

Q.  Okay.  And that injury, is there – What's the current status of that?  Does your shoulder still bother you, or –

A.  No.

Q.  Okay.  And you don't have any specific medical restrictions as a result of your shoulder?

A.  No.

Q.  And you didn't suffer – Did you suffer from any shoulder trouble before you initiated the lawsuit?

A.  I had torn a muscle in my shoulder several years ago, and it should be in my medical records.

Q.  Okay.

A.  But that come from exercising.

Q.  Do you remember approximately when that happened, and can you tell me what happened?

A.  I can't tell you approximately.  You know, it probably was in 2002.

Q.  Okay.

A.  Or 2001.

Q.  And you were lifting weights?

A.  No, I was doing pull-ups. . . .

Q.  And you said that injury was healed, then?

A.  Yeah, it healed.

Q.  And by that injury, I mean your sore shoulder from the incident.  That's healed?  I'm not talking about your torn shoulder muscle.  I didn't want to try to cross you up unintentionally.  The sore shoulder from this incident is healed?

A.  Yes.

Q.  Okay.  All right.  And then the other injury that you said you had from the incident was a sore stomach?

A.  Yeah, my lower abdominal area.

Q.  Okay.  Can you – And as far as medical treatment, what medical treatment did you receive for that?

A.  I never received any for that.

Q.  Never received any for that?

A.  No, I didn't.

Q.  Okay.  And what's the current status of that injury?  Do you still suffer from it?

13

A.  No.  No.

Q.  Okay.  And have your medical providers placed any medical restrictions on you based on the abdominal injuries?

A.  No.  I never was treated for it.

Q.  Did you suffer from abdominal problems prior to –

A.  No, I didn't.

Q.  And have you received any subsequent treatment for the abdominal issues?

A.  No, I haven't.

Q.  Okay.  Next – Okay, from the actual incident, aside from your shoulder and your abdominal area, were there any other physical injuries that occurred?

A.  Yes.  I had swelling on the side of my face that had – it had went away by the time I was seen.

Q.  Okay.  So you didn't seek any treatment – well, did you seek treatment for that?

A.  Yeah, I did seek treatment.

Q.  Okay, and you received – you didn't receive –

A.  I didn't receive any treatment.

Q.  And had that healed prior to – that –

A.  Yes, it did.

Q.  So, it was still prior to when you actually saw –

A.  Yes.

Q.  Okay.  All right.  Let's see, no other physical injuries as a result?

A.  No.

(R-45).

In *Oliver v. R. Falla*, an excessive force case brought by an inmate, the Court of Appeals upheld the jury finding that Plaintiff Oliver had not suffered a compensable injury. 258 F.3d 1277 (11th Cir., 2001).  *Oliver* testified that he suffered a cut to his left knee and that he suffered neck and back pain.  *Id* at 1279.  "*[Oliver]*, however, did not present any evidence of visible injuries, medical expenses, or medical testimony confirming his injuries.  *Id*.  The Defendants in *Oliver* produced photographs taken of the Plaintiff shortly after the

14

alleged assault took place, those "photographs showed no discernible injury." *Id*. This circuit has clearly held that "in an Eighth Amendment case, the plaintiff must show actual injury." *Id* at 1282, *See Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.C. 995, 117 L.ed.2d 156 (1992). In the case at bar, Plaintiff Radford stated in his deposition that he had only a sore shoulder, sore stomach and some swelling in his face. (R-45). However, Plaintiff Radford's alleged sore stomach and swelling had resolved before he was treated and Plaintiff was only given Ibuprofen for his sore shoulder. Considering the facts in the light most favorable to the non-moving party, Plaintiff's allegations of a sore shoulder, sore abdomen and swelling of the face are, at most, *de minimis*. Thus, Plaintiff has failed to prove an physical injury to support his allegation of excessive force.

Subsection (e) of 42 U.S.C. § 1997e states:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

As Plaintiff has failed to show a prior physical injury, he can not claim a psychological injury. Therefore, Plaintiff has failed to show injury as to any of the excessive force related claims.

Claim Six alleges nonfeasance of Rutledge Defendants, Farley and Perry, because they delivered Plaintiff to Valdosta State Prison, where the alleged acts of excessive force took place, violating Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. (R-1). Claims Seven and Eight allege

racial discrimination, that is, that during the alleged incident of excessive force, the defendants beat Plaintiff differently than non-black inmates.  As previously stated, for a Eighth Amendment claim to stand, an actual injury must be shown.  Plaintiff Williams has not provided anything beyond bare allegations to support his claim of excessive force and has failed to show any injury.  Without evidence of excessive force, a claim for nonfeasance based on allowing an act of excessive force to take place, can not stand.  The same is true for Plaintiff's claim of discrimination.  Without evidence of excessive force, a claim of racial discrimination based on the degree of excessive force is without merit.  Plaintiff is unable to prove an essential element of this claim and therefore all of Plaintiff Radford's excessive force claims must fail.

C.  Deliberate Indifference to a Serious Medical Need

Claim Nine alleges that Valdosta Defendants Barrentine, Blade, Del Rossie, Howell, Jones, Kinnel, Orr, Ridall, Sain and Yancey, denied Plaintiff medical evaluation and treatment to Plaintiff Williams upon intake and following use of force and thus acted with deliberate indifference to the health and safety of Williams.

To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry.  *Farrow v.* West, 320 F.3d 1235, 1243 (11th Cir. 2003); *Citing Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995).  First a plaintiff must set forth evidence of an objectively serious medical need.  *Id*.  Second, a plaintiff must prove that the prison official acted with an attitude of "deliberate indifference" to that serious medical need.

16

*Id* (additional citations omitted).  This Court must determine if Plaintiff Williams had an objectively serious medical need.

"In our circuit, a serious medical need is considered "one that has been diagnosed by a physician mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention."  *Id* .  (Additional citations omitted).  "In either of these situations, the medical need must be 'one that, if left unattended, pos[es] a substantial risk of serious harm."  *Id*.  Therefore this claim must fail as Plaintiff Radford has failed to show that he suffered an objectively reasonable serious medical need.

The standard for rebutting a motion for summary judgment, as noted previously, requires a Plaintiff to do more than allege factual wrongdoing by the Defendants.  The law requires that he must provide factual evidence which goes beyond mere allegation to prevent summary judgment.  Here, the Plaintiff has presented no evidence to suggest that the Defendants were deliberately indifferent to a serious medical need, other than his own bare allegations.  Therefore, all of Plaintiff Radford's claims tied to deliberate indifference must fail.

D.  Conspiracy

Claim Three alleges conspiracy in orchestrating and/or participating in intake where alleged excessive force and unreasonable search took place and includes all Valdosta Defendants except Warden Barrow and Nurse Barrentine.  (R-1).  Count Five alleges a conspiracy between Valdosta State Prison Defendants, Warden Barrow and Deputy Warden

Nervo and Rutledge Defendants, Warden Johnson and Deputy Wardens Dotson and Keys, Jr.. *Id.*  As previously noted, in Claims Three and Five, the Plaintiff has alleged that these Defendants, in concert, actively and knowingly violated his constitutional rights.  With regard to theses conspiracy claims, Plaintiff has failed to establish a prima facie case that there existed an agreement to deny Plaintiff his constitutional rights.  Plaintiff is required to establish that there was an explicit agreement between the defendants to violate his constitutional rights.  *See,  Strength v. Hubert*, 854 F.2d 421 (11 Cir. 1988) (overruled on other grounds by *Whitney v. Traylor,* 85 F.3d 581 (11th Cir. 1996).  Plaintiff has also failed to allege the operative facts of a conspiracy.  "A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir.1984) (citing 2A J. Moore & J. Lucas, Moore's Federal Practice ¶ 8.17[5] at 8-180, 181 (2 ed. 1984)).  Plaintiff's complaint presents no facts that show that an agreement and concerted action of conspiracy actually existed between any of the Defendants on any of these counts.  To state a section 1983 conspiracy claim, a plaintiff must establish the supporting, operative facts of the conspiracy.  *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  The mere fact that Plaintiff alleges that there was a conspiracy to deprive him of his constitutional rights, is not sufficient to show participation in a conspiracy.  Thus, all of Plaintiff's conspiracy claims must fail.

E.  Absolute Immunity

No actual claim names Defendants Adams and Donald, nor were there any allegations enumerated in plaintiff's complaint which indicated that Defendants Donald or Adams were

parties to this case in any way.  Plaintiff simply states that Defendants Donald and Adams were sued in their official capacities.

"The Eleventh Amendment protects a State – or an arm of the State (such as the Georgia Department of Corrections) – from being sued in federal court without the State's consent." *Manders v. Lee,* 338 F.3d 1304, 1308 (11th Cir. 2003)(*en banc*), *cert. denied*, 124 S.C. 1061 (2004).  As Plaintiff has failed to produce any evidence or even allege that the State has consented to this lawsuit, this Court recommends that Summary Judgement be GRANTED as to Defendants Adams and Donald, as they are immune from suit.

F.  Qualified Immunity

In their Motion for Summary Judgment, the defendants claimed qualified immunity. (R-42).   In *Saucier v. Katz,* the Supreme Court held that if none of the Plaintiff's constitutional rights were violated had the allegations been established, "there is no necessity for further inquiries concerning qualified immunity." *Saucier v. Katz*, 121 S.C. 2151, 2156 (2001).  Here, such is the case.  The Plaintiff has failed to prove that any of  the rights guaranteed to him through the United States Constitution were violated by the defendants. As Plaintiff Radford has failed at the first prong, no additional analysis is required. Therefore, all Defendants claiming qualified immunity have met their burden and are entitled to such.

**CONCLUSION**

To preclude summary judgment once the Defendants have provided evidence failing

19

to show that any issues of fact remain, the Plaintiff must establish by going beyond the pleadings that there are still genuine issues of material fact to be resolved by a fact-finder. *See, Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). As stated above, genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. Federal Rule of Civil Procedure 56 provides that affidavits, among other discovery evidence, will be used in determining whether any issues of fact remain which should be submitted to the trier of fact for final determination. Having submitted sworn statements, the Defendants, as the moving parties, have met their burden of proof. That is, they have demonstrated to the court the basis for each of their motions which they believe show that there is an absence of any genuine issue of material fact. In response, when the burden of proving that the Defendants were not entitled to a judgment as a matter of law shifted to the Plaintiff, he merely made conclusory allegations, without supporting any of his contentions. In *Barfield v. Brierton*, the court held that Federal Rule of Civil Procedure 56(e) requires:

> [T]hat when a motion for summary judgment is made and supported according to the rule, the nonmoving party's response must set forth specific facts showing a genuine issue for trial. If the party's response consists of nothing more that a repetition of his conclusory allegations, the district court must enter summary judgment in the moving party's favor. *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir. 1981); *cert. denied* 456 U.S. 1010, 102 S.C. 2303, 73 L.Ed.2d 1306 (1982)

883 F.2d 928, 934 (11th Cir. 1989). This evidence was examined by this court in a light more favorable to the Plaintiff as is required by the holding in *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). Having failed to overcome his burden of proof, it is

20

recommended that Defendant's Motions for Summary Judgment be **GRANTED** as Plaintiff has failed to provide evidence to show that any material fact upon which relief may be granted still exists.

Furthermore, this Court finds that Plaintiff's action is frivolous.  An action is frivolous when the plaintiff's legal theory or factual contentions lack an arguable basis either in law or fact.  *Neitzke v. Williams*, 490 U.S. 319 (1989).  An action is "frivolous" for purposes of § 1915(e)(2) if "it is without arguable merit either in law or fact." *Napier v. Preslicka,* 314, F.3d 528, 531 (11th Cir. 2002), *cert. denied*, 124 S.C. 1038 (2004).

**ACCORDINGLY**, because it appears that Defendants are entitled to judgment as a matter of law, **IT IS THE RECOMMENDATION** of the United States Magistrate Judge that the Motion for Summary Judgment be **GRANTED** as to all Claims and all Defendants. It is also recommended that any claims relating to Defendants Moore, Adams and Donald be **DISMISSED** as Defendant Moore was never properly served and Defendants Adams and Donald are entitled to absolute immunity.

Pursuant to 28 U.S.C. § 636(b)(1), the Plaintiff  may serve and file written objections to this **RECOMMENDATION** with the United States District Judge, WITHIN TEN (10) DAYS after being served with a copy thereof.

**SO RECOMMENDED**, this 11th of September, 2006.

S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE

mZc